UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MELISSA W.,[1]

                              Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

DECISION & ORDER

19-CV-6660MWP

## PRELIMINARY STATEMENT

Plaintiff Melissa W. brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 13).

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 9, 11). For the reasons set forth below, I hereby vacate the decision of the Commissioner and remand this claim for further administrative proceedings consistent with this decision.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

**DISCUSSION**

I.    **Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent

they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

(4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

(5) if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

3

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.     The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 29, 2016, the amended alleged onset date. (Tr. 21, 164).[2] At step two, the ALJ concluded that plaintiff had the severe impairments of chronic migraine without aura, major depressive disorder, and generalized anxiety disorder. (Tr. 22). The ALJ also recognized that plaintiff was diagnosed with essential tremor and insomnia, but found that those impairments were nonsevere. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 22-24).

The ALJ concluded that plaintiff retained the RFC to perform a full range of work at all exertional levels, but with certain nonexertional limitations. (Tr. 24). Specifically, the ALJ found that plaintiff could occasionally kneel, crouch, stoop, balance, crawl, climb stairs, and climb ramps, but could never climb ladders, ropes, and scaffolds, or be exposed to unprotected heights and moving mechanical parts; could never be exposed to strobe lights, flashing lights, or bright lights; required a moderate noise environment; could have occasional exposure to dust,

---

[2] The administrative transcript (Docket # 7) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

mists, gases, noxious odors, fumes, pulmonary irritants, and poor ventilation, and could tolerate occasional exposure to extreme heat, wetness, and humidity; was able to understand, carry out, and remember simple instructions and make simple work-related decisions; could frequently deal with supervisors, coworkers, and the public; could occasionally deal with changes in a routine work setting; and would be off-task for ten percent of the workday. (*Id.*).

At step four, the ALJ determined that plaintiff was unable to perform her past work. (Tr. 30). At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on her age, education, work experience, and RFC, plaintiff could perform, such as routing clerk, marking clerk, and collator operator. (Tr. 31). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 32).

### III.   Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that she was not disabled is not supported by substantial evidence and is the product of legal error. (Docket ## 9-1, 12). First, plaintiff argues that the ALJ erroneously evaluated the opinion of plaintiff's treating primary care physician, Dr. Karen Chruscicki ("Dr. Chruscicki"), MD. (Docket ## 9-1 at 10-14; 12 at 1-3). Second, plaintiff maintains that the ALJ failed to properly consider the opinion of Brandon Yehl ("Yehl"), PA-C, a physician assistant who treated plaintiff at Greater Rochester Neurological Associates, P.C. (Docket ## 9-1 at 15-17; 12 at 3-4). Third, plaintiff asserts that the consultative opinion of Dr. Rita Figueroa ("Dr. Figueroa"), MD, was stale. (Docket ## 9-1 at 17-20; 12 at 4-5). Fourth, plaintiff contends that the ALJ did not adequately account for plaintiff's stress limitations. (Docket ## 9-1 at 20-23; 12 at 5-6). Finally, plaintiff argues that

the ALJ did not adequately accommodate plaintiff's essential tremor, which the ALJ found to be a nonsevere impairment.  (Docket ## 9-1 at 23-25; 12 at 6).

IV.  **Analysis**

    A.  **The ALJ's Evaluation of Dr. Chruscicki's Treating Source Opinion**

I turn first to plaintiff's contention that the ALJ's evaluation of Dr. Chruscicki's opinion contravened the treating physician rule.  (Docket ## 9-1 at 10-14; 12 at 1-3).  The gist of plaintiff's argument is that the ALJ did not provide sufficiently "good reasons" in deciding to afford less than controlling weight to this treating source opinion.  I agree.

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, *2 (July 2, 1996)).  When making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms."  *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

An ALJ should consider "all medical opinions received regarding the claimant."  *See Spielberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R.

§ 404.1527(d)[3]).  Generally, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see also Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) ("[t]he opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record") (internal quotations and brackets omitted).  Thus, "[t]he opinion of a treating physician is generally given greater weight than that of a consulting physician[] because the treating physician has observed the patient over a longer period of time and is able to give a more detailed picture of the claimant's medical history."  *Salisbury v. Astrue*, 2008 WL 5110992, *4 (W.D.N.Y. 2008).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various 'factors' to determine how much weight to give to the opinion."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  The ALJ must explicitly consider the "*Burgess* factors":

    (1)    the frequency of examination and length, nature, and extent of the treatment relationship,

    (2)    the amount of medical evidence supporting the opinion,

    (3)    the consistency of the opinion with the record as a whole,

    (4)    whether the opinion is from a specialist, and

    (5)    whatever other factors tend to support or contradict the opinion.

---

[3] This regulation applies to claims filed before March 27, 2017.  For claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c apply.

*Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010) (summary order); *see also Estrella v. Berryhill*, 925 F.3d at 95-96 ("[f]irst, the ALJ must decide whether the opinion is entitled to controlling weight[;] . . . if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it[;] [i]n doing so, it must 'explicitly consider' the . . . nonexclusive '*Burgess* factors'"). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'" *Estrella*, 925 F.3d at 96 (quoting *Halloran v. Barnhart*, 362 F.3d at 32); *Burgess v. Astrue*, 537 F.3d 117, 129-30 (2d Cir. 2008) ("[a]fter considering the above factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion[;] . . . [f]ailure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (citations and quotations omitted); *Wilson v. Colvin*, 213 F. Supp. 3d 478, 482-83 (W.D.N.Y. 2016) ("an ALJ's failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight given denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based on the record") (alterations, citations and quotations omitted). "This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable." *Ashley v. Comm'r of Soc. Sec.*, 2014 WL 7409594, *1 (N.D.N.Y. 2014) (citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Dr. Chruscicki was plaintiff's longtime primary care physician and treated plaintiff at Eastside Internal Medicine. (Tr. 52, 238). She completed a physical RFC questionnaire on May 30, 2018, in which she opined concerning plaintiff's medical conditions and associated functional limitations. (Tr. 343-47). On that questionnaire, Dr. Chruscicki

indicated that she had known plaintiff for more than eleven years and had had intermittent contact with plaintiff throughout that time. (Tr. 343). Dr. Chruscicki noted that plaintiff's diagnoses were major depressive disorder, chronic migraines, and anxiety, and that her prognosis was fair. (*Id.*). The symptoms associated with plaintiff's impairments included severe depressed mood, anxiety, debilitating headache pain, social withdrawal, reduced appetite, social phobia, and extreme sleep disruption. (*Id.*). Dr. Chruscicki indicated that plaintiff's severe migraine pain occurred "nearly daily" and was exacerbated by her depression and anxiety, as well as by sleep disturbance, light, and loud noises. (*Id.*). Plaintiff also exhibited clinical findings of depression, anxious affect, and photophobia. (*Id.*). Dr. Chruscicki noted that plaintiff was taking multiple medications for these impairments, which caused drowsiness and mild cognitive impairments, and she opined that plaintiff's impairments could be expected to last at least twelve months. (*Id.*).

      Dr. Chruscicki also opined that during a typical workday plaintiff would "constantly" experience pain or symptoms severe enough to interfere with the attention and concentration necessary to perform even simple work and that plaintiff was incapable of tolerating "low stress" jobs." (Tr. 344). In addition, Dr. Chruscicki stated that exposure to extreme temperatures, bright lights, loud noises, and dusts/fumes/gases could be expected to trigger plaintiff's migraines and affect her ability to work at a regular job on a sustained basis. (Tr. 346). Finally, Dr. Chruscicki opined that plaintiff would likely miss more than four days of work each month due to her impairments and associated treatment. (*Id.*).

      The ALJ considered Dr. Chruscicki's opinion and determined that it was entitled to less than controlling weight. (Tr. 29). Specifically, the ALJ assigned it "limited weight," noting that the opinion was "not wholly supported by the evidence of record." (Tr. 29-30). As

support, the ALJ pointed to the activities of daily living plaintiff reported during her consultative examinations on June 30, 2016, such as her ability to "care for her personal needs, when she had the motivation," "cook, clean, do laundry and shop, as needed," and "manage her own money, drive, and take public transportation." (Tr. 30 (citing Tr. 266, 270)). The ALJ also noted that plaintiff exhibited intact attention and concentration during her consultative psychiatric evaluation. (*Id.* (citing Tr. 265)). Finally, citing records from plaintiff's treatment at Greater Rochester Neurological Associates, P.C., the ALJ stated that plaintiff "on several occasions was able to provide a clear, concise, and detailed chronological history." (*Id.* (citing Tr. 307, 312, 314)).

Plaintiff maintains that the ALJ's reasoning for discounting Dr. Chruscicki's opinion was "flawed" and based on the ALJ's "mischaracteriz[ations] or ignor[ance] [of the] evidence." (Docket # 9-1 at 12-13). As a result, in plaintiff's view, the ALJ violated the treating physician rule because he did not provide the requisite "good reasons" in support of his decision to discount this opinion.

The Commissioner does not dispute that Dr. Chruscicki qualifies as a treating physician under the applicable regulations. Rather, the Commissioner contends that the ALJ's compliance with the treating physician rule is evident based on a review of the ALJ's decision. (*See* Docket # 11-1 at 20 ("[a]lthough the ALJ decision did not explicitly go through the *Burgess* factors[,] . . . where an ALJ's reasoning and adherence to the regulations is clear, [he] is not required to explicitly go through each and every factor of the regulation")).

The Commissioner's position assumes that the ALJ did in fact apply the treating physician rule to Dr. Chruscicki's opinion, even if that application and analysis is not explicitly stated in the decision. Little in the ALJ's decision, however, supports that assumption. For

10

instance, not only does the decision contain no mention or recitation of the treating physician rule, but it does not even acknowledge Dr. Chruscicki as a treating source. That the absence of any explicit acknowledgment by the ALJ that Dr. Chruscicki was a treating source may reflect his ignorance of that fact is underscored by his explicit references to the treating relationships of other providers whose opinions he weighed. (*See* Tr. 29-30 ("[w]hile Mr. Yehl had a treatment history with the claimant"; "Ms. Sumner reports that the claimant was attending therapy sessions regularly")).

Although it is true, as the Commissioner points out, that the ALJ's failure "to refer explicitly to each regulatory factor in determining the weight to assign to a treating physician's opinion" does not warrant remand where the decision, read in its entirety, supports the conclusion that the ALJ "conscientiously applied the substance of the treating physician rule," *Jasen v. Comm'r of Soc. Sec.*, 2017 WL 3722454, *11 (W.D.N.Y. 2017) (citation omitted); *see Estrella*, 925 F.3d at 96 ("failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error" but does not require remand if "a searching review of the record assures [the court] that the substance of the treating physician rule was not traversed") (internal quotations omitted), I cannot conclude that the treating physician rule was properly applied in this case. Here, the ALJ did not discuss *at all* the first *Burgess* factor – the "frequency, length, nature, and extent of treatment" that Dr. Chruscicki provided plaintiff. This omission is particularly glaring given that Dr. Chruscicki noted on her RFC questionnaire that she had known plaintiff for more than eleven years and that Dr. Chruscicki's opinion was the only medical opinion in the record from an acceptable treating source regarding plaintiff's functional capabilities. *See*, *e.g.*, *Ferraro v. Saul*, 806 F. App'x 13, 15 (2d Cir. 2020) (summary order) (rejecting the argument that the ALJ explicitly considered the frequency, length, nature, and

11

extent of treatment between treating doctors and claimant by "acknowledg[ing] that [treating doctors] had ongoing treating relationships with [claimant] beginning in 2014"; "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment'[;] [t]his is particularly true where, as here, the relationships involved dozens of appointments over nearly two years, and the doctors worked continuously with the patient to develop and monitor the success of various treatment plans"). In addition, although the ALJ cited Dr. Chruscicki's treatment notes in his decision, he did not attribute those records to Dr. Chruscicki, nor discuss whether those records supported Dr. Chruscicki's RFC questionnaire in evaluating her opinion. (Tr. 27-28, 29-30). Thus, review of the record does not permit the conclusion that the ALJ appreciated the significance of the treating relationship that existed between Dr. Chruscicki and plaintiff. This treating relationship is "especially relevant" in this case where plaintiff suffered from multiple apparently interconnected and complicated impairments (chronic migraines without aura, major depressive disorder, and generalized anxiety disorder), for which Dr. Chruscicki treated her over many years. *See*, *e.g.*, *Estrella*, 925 F.3d at 97 (failure to address relationship between treating source and claimant is "especially relevant" because this factor "is of heightened importance" in cases involving mental illness).

Indeed, the ALJ addressed only one of the *Burgess* factors – whether Dr. Chruscicki's opinion was consistent with the record as a whole. (Tr. 29-30). As stated above, in finding that the opinion was not "wholly supported" by the record, the ALJ cited plaintiff's reported activities of daily living, her intact attention and concentration during one consultative examination, and her consistent ability to provide a "clear, concise, and detailed chronological history" during appointments. (*Id.*). On this record, these few considerations do not constitute

sufficiently "good reasons" to discount Dr. Chruscicki's opinion, particularly when it is unclear that the ALJ gave any deference to Dr. Chruscicki's status as a treating physician.

With respect to consideration of her activities of daily living, although plaintiff told the consultative examiners that she could cook, clean, do laundry, care for her personal needs, manage money, drive, and take public transportation (*see* Tr. 266, 270), the record also reveals that plaintiff reported to many medical providers, including Dr. Chruscicki, that she had great difficulty at times in performing such activities due to her severe impairments. (*See*, *e.g.*, Tr. 294 (plaintiff reporting to Jacqueline Hagelberg, FNP, during December 28, 2015 treatment session at Greater Rochester Neurological Associates, P.C., that she was "fired from her job earlier [in the] month due to her frequent absences because of migraines" and that "[w]hen she ha[d] a migraine she [was] incapable of doing anything and just sle[pt]"); Tr. 306 (plaintiff reporting to Yehl on August 18, 2016 that she was experiencing greater than 15 headache days a month, with headaches "lasting greater than 4 hours per episode," and that "[m]any [of her headaches] prevent[ed] her from engaging in her activities of daily living"); Tr. 338 (plaintiff reporting during October 5, 2016 treatment session with Dr. Lisa Schwartz at Eastside Internal Medicine that "she sometimes spen[t] the whole day in bed" when she had a headache); Tr. 311 (plaintiff reporting to Yehl on December 29, 2016 that she continued to have "headaches virtually every single day and most of the time these prevent[ed] her from doing many of the day-to-day activities she normally t[ook] part in" and that she "missed Christmas with a bad migraine"); Tr. 328 (plaintiff reporting to Dr. Chruscicki on April 6, 2018 that due to her impairments, "[m]ost of the time she d[id] not leave her room or the house," that she could "go up to 2 weeks without showering," that she was "unable to leave the house to shop for her son at Wegmans [and was] unable to be there for her son," that she "fe[lt] overwhelmed by simple tasks

13

such as paying bills even when she ha[d] the money," and that she stayed in bed during her "debilitating migraines that [would] last for several days[,] . . . getting up only to go to the bathroom or to take 'a shot' of her migraine medicine"); Tr. 324-25 (plaintiff reporting to Dr. Chruscicki on April 27, 2018 that "when she ha[d] a migraine she [would] sleep in bed for 2 days [and it was] unpredictable when she might wake up from that")). The ALJ's decision does not reveal how the ALJ resolved these apparent conflicts in the record. *See Mecklenburg v. Astrue*, 2009 WL 4042939, *4 (W.D.N.Y. 2009) ("[a]n ALJ need not mention every piece of evidence in the record, but at the same time he cannot pick and choose only parts of a medical opinion favoring his conclusion of nondisability and he cannot ignore an entire line of evidence that is contrary to his findings") (alterations, citations, and quotations omitted). Moreover, in light of the above-cited records, the activities of daily living relied upon by the ALJ to discount Dr. Chruscicki's opinion do not meaningfully illuminate the fundamental question of whether plaintiff's severe impairments of chronic migraines without aura, major depressive disorder, and generalized anxiety disorder would limit her ability to do any work-related activities on a full-time basis. *See, e.g., Stacy D. v. Comm'r of Soc. Sec.*, 358 F. Supp. 3d 197, 209 (N.D.N.Y. 2019) ("[t]o the extent the ALJ relied on plaintiff's activities of daily living as evidence of her ability to work on a sustained basis despite a history of fluctuating migraine headache symptoms, such evidence provides little, if any, support for his finding"); *see also Kelsey O. v. Comm'r of Soc. Sec.*, 2018 WL 3193197, *5-6 (N.D.N.Y. 2018) (ALJ improperly discounted opinion of treating physician regarding plaintiff's time off-task and absenteeism based on the ALJ's view that the treating physician's opinion was "inconsistent with plaintiff's 'wide range of daily activities'"[;] "[t]he ALJ's reliance on isolated treatment notes showing that plaintiff was not experiencing headaches at the time of the examination fails to recognize the episodic nature of

the impairment[;] . . . [t]he ALJ's analysis also ignores the numerous instances in the record when plaintiff complained of debilitating headaches[;] . . . [i]n addition, plaintiff's ability to perform certain activities outside the house is a very weak basis for the ALJ's rejection of the treating source opinion, because all of the activities described were performed at a rate other than eight hours a day, five days a week") (quotations omitted); *Harris v. Colvin*, 149 F. Supp. 3d 435, 445-46 (W.D.N.Y. 2016) ("[c]ourts in this Circuit repeatedly have recognized that a claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job[;] . . . [d]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations") (alterations and quotations omitted).

The ALJ also discounted Dr. Chruscicki's opinion based on the observation of consultative psychologist Dr. Adam Brownfield ("Dr. Brownfield"), PhD, that plaintiff had intact attention and concentration. (Tr. 30, 265-66). Dr. Brownfield's observation conflicted with Dr. Chruscicki's opinion. (*See* Tr. 344 (opining that plaintiff would "constantly" experience pain or symptoms during a typical workday that would be severe enough to interfere with the attention and concentration necessary to perform even simple work tasks)). Again, the ALJ failed to explain why he credited Dr. Brownfield's observation over Dr. Chruscicki's opinion – the first coming from a consultative examiner who evaluated plaintiff once, and the second coming from a treating physician who had an established, long-term relationship with plaintiff. In addition, the record suggests that plaintiff was not experiencing headache symptoms at the time of her evaluation with Dr. Brownfield. (*See* Tr. 188). As the treatment records reveal, plaintiff's headache symptoms, which the record suggests she experienced more

15

frequently than not, appeared to severely affect what she could do.  (*See, e.g.*, Tr. 186-92 (calendars kept by plaintiff from 2015 through the first half of 2018 noting the days on which she experienced headaches and the severity of those headaches); Tr. 294 (Jacqueline Hagelberg, FNP, noting on December 28, 2015 that plaintiff "ha[d] only very occasional days *without* any headache") (emphasis supplied); Tr. 296 (Dr. Joseph Mann, MD, noting at a March 24, 2016 appointment at Greater Rochester Neurological Associates, P.C., that plaintiff had "chronic daily headaches" for at least one year, and that "she missed 35 days" of work in 2015); Tr. 309 (Yehl indicating on November 17, 2016 that plaintiff "continue[d] to have a headache virtually every single day"); Tr. 331-32 (Dr. Chruscicki noting on August 1, 2017 that plaintiff experienced "frequent migraines for which she sees a neurologist")).[4]  Without evidence that the ALJ considered Dr. Chruscicki's treating relationship with plaintiff, the Court cannot find that adequate evidence supports the ALJ's determination to credit Dr. Brownfield's opinion regarding plaintiff's attention and concentration over Dr. Chruscicki's.

Finally, and for many of the reasons indicated above, the ALJ's reliance on plaintiff's consistent ability to provide providers with a "clear, concise, and detailed chronological history" regarding her treatment history does not constitute a sufficiently "good reason" to discount Dr. Chruscicki's treating opinion.  Although plaintiff's ability to recount her treatment history to medical providers may be probative of her ability to follow instructions and to recall information, the ALJ's reliance on this limited evidence does not amount to sufficient evidence to justify discounting her treating physician's opinion that she could not maintain the

---

[4] At the administrative hearing, plaintiff also testified that she averaged "18 headache days" per month and that each headache typically lasted for "two or three days at a time." (Tr. 48-49).  In the ALJ's decision, he found that plaintiff's "reported frequency and duration of headaches [were] not plausible because they exceed the allotted days in an average month (i.e., 18 headaches per month each lasting two or three days each)." (Tr. 29 (citing Tr. 48-49)).  The ALJ misconstrued plaintiff's testimony.  Plaintiff did not testify, as the ALJ suggests, that she experienced 18 *headaches* per month.  Rather, she testified that she experienced 18 headache *days* per month, which appears consistent with other evidence in the record.

attention and concentration necessary to perform even simple work tasks or handle even "low stress" jobs during a typical workday. (*See* Tr. 344).

In sum, review of the ALJ's decision does not demonstrate that the ALJ applied the treating physician rule to Dr. Chruscicki's opinion. Because I am unable to conclude that the ALJ recognized the applicability of the treating physician rule or that he applied it to Dr. Chruscicki's opinion in this case, remand is required. *See*, *e.g.*, *Alexander v. Comm'r of Soc. Sec.*, 2014 WL 7392112, *6 (D. Vt. 2014) (remand is necessary where "[t]he court cannot be confident that [plaintiff] received the treating physician rule's procedural advantages, nor can it conclude that the substance of the treating physician rule was not traversed") (internal quotations and brackets omitted); *Santiago v. Comm'r of Soc. Sec.*, 2014 WL 4793448, *13 (E.D.N.Y. 2014) ("the [c]ourt is not confident that the ALJ properly adhered to the treating physician rule, and this error constitutes an independent ground for remand").

### B. Plaintiff's Remaining Contentions

In light of my determination that remand is warranted for proper application of the treating physician rule, and because plaintiff's other challenges to the ALJ's decision "may be impacted by the subsequent proceedings," I decline to address plaintiff's remaining contentions. *See*, *e.g.*, *Drozdowski v. Colvin*, 2016 WL 5402698, *8 (W.D.N.Y. 2016) (declining to reach plaintiff's remaining contentions where remand was warranted based on the ALJ's failure to comply with the treating physician rule") (collecting cases); *see also Rookey v. Comm'r of Soc. Sec.*, 2015 WL 5709216, *4 (N.D.N.Y. 2015) ("[b]ecause [plaintiff's] remaining contentions . . . may be impacted by the subsequent proceedings directed by this Order, it would be improper for the court to consider them at this juncture").

17

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and plaintiff's motion for judgment on the pleadings **(Docket # 9)** is **GRANTED** to the extent that the Commissioner's decision is reversed, and this case is remanded to the Commissioner pursuant to 42 U.S.C. § 405(g), sentence four, for further administrative proceedings consistent with this decision.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
       March 16, 2021